IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LILLIAN A. WALKER-STEWART,  §
                            §
            Plaintiff,      §
                            §
v.                          §        CIVIL ACTION NO. H-04-2187
                            §
FEDERAL EXPRESS CORPORATION §
and FEDERAL EXPRESS CORPORATION §
LONG TERM DISABILITY PLAN,  §
                            §
            Defendants.     §

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff, Lillian A. Walker-Stewart, brings this action against defendants, Federal Express Corporation (Federal Express) and Federal Express Corporation Long Term Disability Plan (the "LTD Plan") for denial of long-term disability benefits pursuant to § 502(a) of the Employee Retirement Income Security Act (ERISA) codified at 29 U.S.C. § 1132(a).  Federal Express counterclaims for reimbursement of overpayments resulting from offsets not taken for income plaintiff received from other sources, e.g., the Social Security Administration.[1]  Pending before the court is defendants' Motion for Summary Judgment on plaintiff's claim for wrongful denial of long-term disability benefits (Docket Entry No. 17).  For the reasons explained below, defendants' motion will be granted.

_____

[1]See Defendants' Counter-Claim to Plaintiff's First Amended Complaint, Docket Entry No. 12, pp. 5-8 ¶¶ 1-20.

## I.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56(c).  Disputes about material facts are genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). Entry of summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  Factual controversies are to be resolved in favor of the nonmovant "only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## II.  **Factual and Procedural Background**

While performing her duties as a Courier/DOT for Federal Express on January 11, 2001, plaintiff injured her right arm and hand.  On January 18, 2001, when plaintiff first sought medical attention, Dr. Gabriela Smart advised her not to return to work.[2]

---

[2] See Functional Abilities Evaluation included in the Appeal Brief that plaintiff filed following the initial denial of her (continued...)

-2-

A.    **LTD Plan Provisions**[3]

The LTD Plan is an employee welfare benefit plan governed by ERISA.  Federal Express is the LTD Plan Administrator.  During the period relevant to the plaintiff's claim, Kemper National Services, Inc. (Kemper) was the Claims Paying Administrator for the LTD Plan. The LTD Plan provides a monthly disability benefit equal to 60% of a Covered Employee's monthly income if he or she becomes "disabled" as that term is defined by the LTD Plan.  The LTD Plan defines "disabled" to

> mean either an Occupational Disability or a Total Disability; provided, however, that a Covered Employee shall not be deemed to be Disabled or under a Disability unless he is, during the entire period of Disability, under the direct care and treatment of a Practitioner and such Disability is substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms.[4]

_____

[2](...continued)
claim for LTD benefits (Appeal Brief), p. D00019.  Both parties have submitted copies of plaintiff's Appeal Brief.  See Exhibit 3 submitted in support of Defendants' Memorandum in Support of Motion for Summary Judgment attached to Docket Entry No. 18, and Exhibit 1 submitted in support of Plaintiff's Response to Defendants' Motion for Summary Judgment attached to Docket Entry No. 20.

[3]See Statement of Undisputed Material Facts contained in Defendants' Memorandum in Support of Motion for Summary Judgment, Docket Entry No. 18, pp. 5-8.  Plaintiff has not disputed the statements excerpted from this section of the defendants' memorandum.

[4]LTD Plan § 1.1(k), p. D00568.  Both parties have submitted copies of the LTD Plan.  See Exhibit 5 submitted in support of Defendants' Memorandum in Support of Motion for Summary Judgment
(continued...)

"Occupational Disability" under the LTD Plan "mean[s] the inability of a Covered Employee, because of a medically-determinable physical impairment or Mental Impairment (other than an impairment caused by a Chemical Dependency), to perform the duties of his regular occupation."[5]   The LTD Plan defines "Total Disability" to

> mean the complete inability of a Covered Employee, because of a medically-determinable physical impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week for which he is reasonably qualified (or could reasonably become qualified) on the basis of his ability, education, training, or experience.[6]

Occupational Disability benefits are payable for a period of twenty-four months.[7]   The LTD Plan grants discretionary authority to the Federal Express Benefit Review Committee (BRC) "to interpret the Plan's provisions in accordance with its terms with respect to all matters properly brought before it pursuant to this Section 5.3, including but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan."[8]

---

[4](...continued)
attached to Docket Entry No. 18, and Exhibit 2 submitted in support of Plaintiff's Response to Defendants' Motion for Summary Judgment attached to Docket Entry No. 20.

[5]LTD Plan § 1.1(u), p. D00572.

[6]LTD Plan § 1.1(gg), p. D00577.

[7]LTD Plan § 3.3(c)(3), p. D00585.

[8]LTD Plan § 5.3(d), p. D00616.

-4-

**B.   Plaintiff's Claim for Long-Term Disability Benefits**

From February 1, 2001, until August 1, 2001, plaintiff received short-term disability benefits from the Federal Express Short Term Disability Plan.[9]  From August 2, 2001, until August 1, 2003, plaintiff received Occupational Disability benefits from the LTD Plan.[10]  During the time that plaintiff received short-term disability and Occupational Disability benefits she underwent surgery twice:  (1) on April 4, 2001, plaintiff underwent carpel tunnel release (CTR) and DeQuervain surgery of the right hand after which she was prescribed Vicodin for pain;[11] and (2) in November of 2002 Dr. Gartsman performed arthroscopic surgery on plaintiff's right shoulder following which plaintiff participated in physical therapy and a work hardening program but continued to complain of persistent right wrist and hand pain and intermittent swelling.[12]

On February 21, 2003, Kemper Services (Kemper) sent a letter to Dr. Smart requesting information regarding plaintiff's claim for

---

[9]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 20, p. 8.

[10]Id.

[11]Id. at 10 (citing Appeal Brief at pp. D00189 and D00442).

[12]Id. at p. 14.  (See also Appeal Brief at p. 402.)

Total Disability benefits.[13] Dr. Smart indicated that plaintiff was unable to work on either a full-time or part-time basis, that plaintiff was unable to work with restrictions, and that plaintiff's restrictions were not permanent.[14]

On March 17, 2003, Dr. Gartsman, the physician who performed plaintiff's shoulder surgery, released plaintiff to perform light-duty work subject to the following restrictions:  "allowed to lift 5 pounds with the operated arm, no lifting above the shoulder level, allowed to work a full 8 hour shift, not released to drive standard transmission, [n]o ladder climbing more than 6 feet.  [N]o work at unprotected heights."[15]

On April 2, 2003, plaintiff saw Dr. Mohamed at the Pain Institute of Texas who diagnosed her with Reflex Sympathetic Dystrophy (RSD), treated her with a right stellate ganglion nerve block injection, and recommended that she undergo rehabilitation and chiropractic manipulation and joint mobilization if indicated.[16]

On April 14, 2003, plaintiff saw Dr. Larry Pollock who performed a Psychological Consultative Examination and diagnosed the plaintiff with Major Depressive Disorder caused by lack of

_____

[13]_Id._ at p. 15 (citing Appeal Brief at p. D00335).

[14]_Id._

[15]_Id._ (citing Appeal Brief at p. D00229).

[16]_Id._ at p. 16 (citing Appeal Brief at pp. D00227-D00228).

mobility, continuous pain and discomfort, isolation, and inability to feel productive.[17]

On April 23, 2003, plaintiff returned to Dr. Mohamed who recommended a second right stellate ganglion nerve block injection as soon as possible to relieve her RSD condition, and prescribed various medications.[18]

On June 2, 2003, a General Peer Review was performed by Dr. Sassoon who reviewed records from Dr. Smart, Dr. Mohamed, and Dr. Gartsman, and determined that "the data submitted does not substantiate that a functional impairment exists that would preclude the claimant from engaging in any compensable employment for a minimum of twenty-five hours per week."[19]   Dr. Sassoon explained the rationale for his determination as follows:

> [t]he claimant's condition of RSD involving the right upper extremity appears to be stabilizing with current intervention, consisting of stellate ganglion blocks and physical therapeutic intervention.  The claimant has been actively involved in a physical and therapeutic program, which includes use of treadmill and upper extremity strengthening, as recently as last month.  At this time, there does not appear to be any condition which would preclude the claimant from performing a sedentary level activity using her left upper extremity and avoidance of using the affected right upper extremity that has been diagnosed with RSD.  There is no evidence of acute neurologic orthopedic abnormality or medical condition

---

[17]Id. at pp. 16-17 (citing Appeal Brief at pp. D00176-D00183, see especially pp. D00182 and D00183).

[18]Id. at pp. 17-18 (citing Appeal Brief at pp. D00275-D00276).

[19]Appeal Brief at p. D00361.

that would preclude the claimant from performing
sedentary level activities with avoidance of right upper
extremity usage in light of the claimant's underlying
diagnosis of RSD of her upper extremity.  She appears to
be progressing with current course of management,
including injection treatments and physical therapy, and
appears to be medically stable and should be able to
tolerate a sedentary position, which does not involve
repetitive right upper extremity involvement.[20]

On June 16, 2003, plaintiff underwent a Functional Abilities
Evaluation (FAE) performed by occupational therapist Angela T.
Grygar, OTR, STS, who concluded that

it is the professional opinion of the evaluator that
Ms. Stewart demonstrated the ability to safely and
dependably work in a position in which she lifts, carries
or transfers no more than 20 lbs. especially above
shoulder level occasionally, reaching above shoulder
level, pushing and pulling are performed on an occasional
basis only and frequent rest periods are allotted for
stretching to decrease pain.  She feels at this time that
she is at 70% of her pre-injury capacity and is "unable"
to perform her usual and customary job essential tasks as
a courier for Federal Express.

Ms. Stewart demonstrated the physical abilities to
perform with the LIGHT level of physical strength
requirements as defined by the U.S. Department of Labor.
Pre-injury occupation requires she work at MEDIUM-HEAVY
level according to her job description provided by her
employer.

The primary barriers preventing Ms. Stewart from
returning to her previous employment are the inability to
tolerate repetitive gross motor right shoulder and hand
movements, such as, reaching to all levels especially
above shoulder level and pushing and pulling within a
fast-paced work environment, decreased right shoulder
strength and also decreased right hand grip strength.
She also demonstrated increased right shoulder pain while
performing all specific job essential tasks and decreased

_____

[20]Appeal Brief at p. D00362.

tolerance to dynamic lifting and carrying >20 lbs. occasionally and 10 lbs. frequently while utilizing compensatory techniques secondary to weakness, pain and fear of reinjury while performing all physical and vocational activities. She also demonstrated significant psychological barriers, affecting her ability to make [] necessary physical and functional gains towards meeting all her return to work goals.[21]

On June 24, 2003, plaintiff's claim for total disability benefits was denied.[22]

On August 16, 2003, plaintiff appealed the denial of total disability benefits and submitted additional information for consideration.[23]  The additional information included a statement from Dr. Mohamed that described the initial denial of plaintiff's claim for total disability benefits as "totally unacceptable."[24] Dr. Mohamed explained that

> [a]lthough the patient was responding well to injection therapy, her level of pain currently has reached previous levels, pain symptoms and as stated in previous reports, RSD or reflex sympathetic dystrophy is one of the most devastating entit[ies] since it [does] not always respond to injection therapy and further options need[] to be evaluated so the patient can return to gainful activities as soon as possible.[25]

---

[21]<u>Id.</u> at D00020-D00021.

[22]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 20, pp. 18-19 (citing Appeal Brief at pp. D00011-D00013).

[23]<u>Id.</u> at p. 19 (citing Appeal Brief at p. D00014).

[24]<u>Id.</u> at p. 20 (citing Appeal Brief at p. D00015).

[25]<u>Id</u>.

On September 26, 2003, the Social Security Administration awarded disability benefits to the plaintiff in a Notice of Decision Fully Favorable.[26]

On October 6, 2003, a general peer review was conducted by Dr. Riso of Pain Management and Anesthesiology who reviewed (among other things) the FAE performed on June 16, 2003, statements submitted by Dr. Smart and Dr. Mohamed, including Dr. Mohamed's statement of July 9, 2003,[27] and concluded that "the data does not substantiate that a functional impairment exists that would preclude the claimant from engaging in any compensable employment for a minimum of twenty-five hours per week."[28]  Dr. Riso explained that

> [a]lthough there is definite pathology noted in the right
> upper extremity, such pathology per projected findings of
> Dr. Mohamed do not support a functional impairment that
> would preclude the claimant from working any occupation
> for 25 hours per week.  The right upper extremity
> strength 4/5 is still adequate for a sedentary functional
> position.
>
> In examination of Dr. Gartsman, shows no swelling of the
> right shoulder, no swelling, no eccymosis, no atrophy,
> and normal looking skin.  Date of this visit is 08/12/02.
> There are no significant objective findings on the note
> dated 08/26/03 that would preclude the claimant from
> performing sedentary duties.  The note from Dr. Gartsman
> dated 03/17/03 indicates a light duty work status,
> release to work as of 03/17/03, with restrictions of
> lifting up to 5 lbs. on the operated arm, no lifting

---

[26]_Id._ at p. 22 (citing Appeal Brief at pp. D00097-D00100).

[27]See Peer Review Data Sheet, Appeal Brief at p. D00374.

[28]General Peer Review, Appeal Brief at p. D00371.

above the shoulder level, and allowed to work full 8 hour shift.[29]

On October 9, 2003, a general peer review was conducted by Dr. Schechter who reviewed (among other things) the FAE performed on June 16, 2003, statements submitted by Dr. Smart and Dr. Mohamed, including Dr. Mohamed's statement of July 9, 2003,[30] and concluded that "the data submitted does not substantiate that a functional impairment exists that would preclude the claimant from engaging in any compensable employment for a minimum of twenty-five hours per week from 08/02/03."[31]  Although Dr. Schechter noted that "[t]here were some inconsistencies with regard to functional abilities evaluation performed on 06/16/03 and the report by Dr. Mohammed on 07/09/03," he also noted that "[t]here are no recent objective reports documenting [plaintiff's] current functional status or clinical treatment program [and that t]here are no objective clinical contraindications to her working at a sedentary position without repetitive use of the right upper extremity."[32]  On November 11, 2003, Dr. Schechter submitted a General Peer Review Addendum for which he reviewed all previous records, the General Peer Review performed by Dr. Riso on

_____

[29]<u>Id.</u> at p. D00372.

[30]See Peer Review Data Sheet, Appeal Brief at p. D00366.

[31]General Peer Review, Appeal Brief at p. D00364.

[32]<u>Id.</u> at p. D00365.

October 6, 2003, and Plaintiff's Social Security Disability award letter yet did not change his previous conclusion.[33]

On October 22, 2003, plaintiff began psychotherapy sessions with Dr. Johnstone who found that plaintiff engaged in symptom amplification and fabrication, did not believe that her mental health treatment was reasonable, necessary, or related to her work-related injury, and did not believe that treatment of her pain with narcotics was justified.[34]

On November 9, 2003, Dr. Riso prepared a General Peer Review Addendum in which he found significant the FAE performed on June 6, 2003, that showed plaintiff able to perform at the sedentary functional exertion level.[35]  Dr. Riso concluded that "the data submitted does not substantiate that a functional impairment exists that would preclude the claimant from engaging in any compensable employment for a minimum of twenty-five hours per week."[36]  Dr. Riso explained that "the submitted information does not contradict or otherwise obviate the Functional Capacity Evaluation of 06/13/03."[37]

---

[33]Appeal Brief at pp. D00367-D00370.

[34]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 20, p. 26 (citing Appeal Brief at p. D00384).

[35]Id. at pp. 25-26 (citing Appeal Brief at pp. D00375-D00378).

[36]General Peer Review, Appeal Brief at p. D00375.

[37]Id. at p. D00376.

On December 17, 2003, Federal Express Corporation's Benefit Review Committee (the "BRC") denied plaintiff's appeal.[38]   The BRC "based its decision to uphold the denial of total disability benefits beginning 08/02/03, on all the information submitted including the medical documentation and . . . [the] peer physician reviews."[39]

## C.   Procedural Background of this Lawsuit

On June 4, 2004, plaintiff filed this action against Federal Express (Docket Entry No. 1), and on November 2, 2004, she amended her complaint to add the LTD Plan as a party defendant (Docket Entry No. 10).   On December 15, 2004, defendants filed their joint Answer, Affirmative Defenses, and Counter-Claim (Docket Entry No. 12), and on March 18, 2005, defendants filed their pending Motion for Summary Judgment (Docket Entry No. 17).

## III.   Defendants' Motion for Summary Judgment

The parties agree that "[t]he sole issue . . . [presented by defendants' motion for summary judgment] is whether Defendant Federal Express's decision to deny [p]laintiff's claim for LTD

---

[38]See Benefit Review Committee Decision, Appeal Brief at pp. D00005-D00007.

[39]Id. at p. D00006.

[i.e., total disability] benefits was arbitrary and capricious based on the evidence in the Appeal Brief."[40]

---

[40]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 20, p. 4. See also Defendants' Memorandum in Support of Motion for Summary Judgment, Docket Entry No. 18, pp. 2-5.  Benefit determinations made by a plan administrator can be divided generally into two categories: (1) the determination of the facts underlying the claim for benefits; and (2) the determination of whether the administrator properly interpreted the terms of the plan.  See Chapman v. The Prudential Life Insurance Co. of America, 267 F.Supp.2d 569, 576 (E.D. La. 2003) (citing Wildbur v. ARCO Chemical Co., 974 F.2d 631, 637 (5th Cir. 1992)).  Case law provides different standards of review depending upon whether the plaintiff challenges the administrator's determination of facts underlying the plan or the administrator's interpretation of plan terms.  Id.  Plaintiff's characterization of the sole issue in this case implicates the plan administrator's determination of facts underlying the claim for benefits, not the administrator's interpretation of the plan's terms.  Compare Gooden v. Provident Life & Accident Ins. Co., 250 F.3d 329 (5th Cir. 2001) (reviewing a plan administrator's factual determination) with Duhon v. Texaco, Inc., 15 F.3d 1302 (5th Cir. 1994) (reviewing a claimant's challenge to the administrator's interpretation of the plan).  A factual determination usually consists of an administrator's finding that a claimant's condition meets — or fails to meet — a definition in the policy.  See Chapman, 267 F.Supp.2d at 576.  For instance, in Gooden, a case that provides an example of a plan administrator's factual determination, the administrator determined that "objective medical findings" did not support Gooden's disability claim.  Gooden, 250 F.3d at 331.  In contrast, a challenge to plan interpretation usually consists of the plan administrator's interpretation of a plan term.  For example, in Duhon the court considered whether the administrator abused his discretion in interpreting the phrase "any job for which he . . . is qualified" as meaning "any job that required only sedentary or light work."  Duhon, 15 F.3d at 1307.  A plan administrator's factual determinations are always reviewed for abuse of discretion; but a plan administrator's construction of the meaning of plan terms or plan benefit entitlement provisions is reviewed de novo unless the plan contains an express grant of discretionary authority and, if so, then those decisions are also reviewed for abuse of discretion.  Vercher v. Alexander & Alexander Inc., 379 F.3d 222, 226 (5th Cir. 2004).  "When applying the abuse of
(continued...)

**A.    Applicable Law**

A decision is arbitrary when made "'without a rational connection between the known facts and the decision or between the found facts and the evidence.'"  Lain v. UNUM Life Ins. Co. of America, 279 F.3d 337, 342 (5th Cir. 2002) (quoting Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich., 97 F.3d 822, 828 (5th Cir. 1996)).  "An administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial.'"  Id. (quoting Vega v. National Life Insurance Services, Inc., 188 F.3d 287, 299 (5th Cir. 1999)).  An administrator's decision is not arbitrary and capricious if it is supported by substantial evidence.  MediTrust Financial Services Corp. v. Sterling Chemicals, Inc., 168 F.3d 211, 215 (5th Cir. 1999).  "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[41]  Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2004) (quoting Deters v. Secretary of Health, Educ. & Welfare, 789 F.2d 1181, 1185 (5th Cir. 1986)).  See also Richardson v. Perales,

_____

[40](...continued)
discretion standard . . . [a court must] analyze whether the plan administrator acted arbitrarily and capriciously."  Lain v. UNUM Life Ins. Co. of America, 279 F.3d 337, 342 (5th Cir. 2002).

[41]Id.

91 S.Ct. 1420, 1427 (1971) (recognizing that this defini-tion of

"substantial evidence" applies to a variety of contexts).  If the

plan administrator's decision "is supported by substantial evidence

and is not arbitrary or capricious, it must prevail."  Ellis, 394

F.3d at 273.


**B.   Analysis**

Plaintiff argues that defendants are not entitled to summary

judgment on her claim for wrongful denial of total disability

benefits because "[s]ubstantial [e]vidence [e]xists in the

[a]dministrative [r]ecord to [p]rove [p]laintiff [m]et the Plan's

[d]efinition of 'Total Disability.'"[42]  Plaintiff argues that the

BRC's

> decision to deny [her] LTD benefits was erroneous . . .
> [because her] treating physicians repeatedly stated that
> [she] was unable to return to work and three psychiatric
> evaluations indicated that [her] combination of physical
> and mental impairments prevented her from working.
> Despite this evidence, Defendants' physician reviewers,
> who had neither seen nor examined Plaintiff, arbitrarily
> and capriciously misconstrued or ignored salient facts.[43]


1.   Burden of Proof

Plaintiff's argument that defendants are not entitled to

summary judgment because substantive evidence exists in the

administrative record to prove that she met the LTD Plan's

---

[42]Id. at p. 26.

[43]Id. at p. 27.

definition of "total disability" misapprehends the burden of proof
in ERISA cases.  No law requires a district court to rule in favor
of an ERISA plaintiff merely because she has supported her claim
with substantial evidence, or even with a preponderance of
evidence.  Ellis, 394 F.3d at 273 (citing Meditrust, 168 F.3d at
215).  If the BRC's "decision is supported by substantial evidence
and is not arbitrary and capricious . . . [the defendants] must
prevail."  Id.  Although two of plaintiff's treating physicians,
Dr. Smart and Dr. Mohamed, repeatedly concluded that plaintiff was
totally disabled and not capable of working in any capacity, the
Fifth Circuit has held that a plan administrator need not give more
weight to the opinion of a claimant's treating physicians than it
gives to the opinions of other physicians or other evidence in the
record, and that it is not an abuse of discretion for a plan
administrator to rely on the conclusions of physicians who have
only reviewed a claimant's medical records without conducting a
physical examination of the claimant.  See Gooden v. Provident
Life & Accident Ins. Co., 250 F.3d 329, 335 (5th Cir. 2001).
Therefore, it does not matter that the conclusions of the peer
review physicians on which the BRC relied are contradicted by the
conclusions of two treating physicians, Dr. Smart and Dr. Mohamed,
as long as the BRC's denial of benefits is "based on evidence, even
if disputable, that clearly supports the basis for its denial."
Lain, 279 F.3d at 342 (quoting Vega, 188 F.3d at 299).

-17-

2.   <u>Substantial Evidence Supports BRC's Decision</u>

Since the BRC's decision to deny the plaintiff's claim for total disability benefits is supported by the work release issued to the plaintiff by her treating surgeon, Dr. Gartsman, on March 17, 2003, and by the Functional Abilities Evaluation performed by occupational therapist Angela T. Grygar, OTR, STS, on June 16, 2003, as well as by the opinions of three peer physicians, Dr. Sassoon, Dr. Schechter, and Dr. Riso, the court concludes that the BRC's decision was supported by substantial evidence in the administrative record.

On March 17, 2003, Dr. Gartsman, the physician who performed plaintiff's shoulder surgery, released plaintiff to perform light-duty work subject to the following restrictions: "allowed to lift 5 pounds with the operated arm, no lifting above the shoulder level, allowed to work a full 8 hour shift, not released to drive standard transmission, [n]o ladder climbing more than 6 feet. [N]o work at unprotected heights."[44]   On June 16, 2003, plaintiff underwent a functional abilities evaluation performed by occupational therapist Angela T. Grygar, OTR, STS, who concluded that plaintiff "demonstrated the physical abilities to perform with the LIGHT level of physical strength requirements as defined by the

_____

[44]<u>Id.</u> (citing Appeal Brief at p. D00229).

-18-

U.S. Department of Labor."[45]  Despite plaintiff's assertions that the BRC based its denial on the opinions of peer review physicians who had neither treated nor examined her, the peer review physicians based their opinions on those of Dr. Gartsman who had operated on plaintiff's right shoulder, and the occupational therapist who performed plaintiff's FAE on June 16, 2003.

Referencing either Dr. Gartsman's work release and/or the FAE performed on June 16, 2003, the three physician peer reviewers, Dr. Sassoon, Dr. Schechter, and Dr. Riso, each concluded that the available records failed to contain any objective findings that precluded plaintiff from working in any occupation for a minimum of 25 hours per week.  After reviewing additional evidence submitted by the plaintiff after the initial denial of benefits, Dr. Schechter and Dr. Riso each prepared addenda to their original peer reviews but did not change their initial conclusions that plaintiff does not suffer a "total disability" as defined by the LTD Plan because nothing in her records showed that her condition had changed between either the date of Dr. Gartsman's work release (March 17, 2003) or the FAE (June 16, 2003), and the date from which she sought total disability benefits, August 2, 2003. Although two of plaintiff's treating physicians, Dr. Smart and Dr. Mohamed, concluded that plaintiff was not able to work in any

_____

[45]FAE included in the Appeal Brief at pp. D00018-D00030.

capacity as of August 2, 2003, the court concludes that the BRC's decision to deny plaintiff's claim for total disability benefits was not arbitrary and capricious because it represents a permissible choice between competing opinions expressed by Dr. Smart and Dr. Mohamed, and by the peer review physicians who relied, in turn, on the opinions expressed by Dr. Gartsman and by the occupational therapist who performed plaintiff's FAE on June 16, 2003.  See Gooden, 250 F.3d at 335.  See also Sweatman v. Commercial Union Insurance Co., 39 F.3d 594, 602 (5th Cir. 1994) (denial of benefits was not arbitrary and capricious when decision came down to permissible choice between the opinions of claimant's physicians and independent medical consultant).  Moreover, since the LTD Plan's definition of "[t]otal [d]isability" requires a finding that the claimant suffers from "a medically-determinable physical impairment,"[46] the court is not persuaded that the BRC's "cursory review"[47] of reports from Dr. Matorin, Dr. Ganc, and Dr. Pollock that plaintiff suffers from the mental impairment of depression as a result of her work injury was arbitrary or capricious because the LTD Plan does not provide total disability benefits for mental impairments.

The court concludes that the BRC's denial of plaintiff's claim for total disability benefits was supported by substantial evidence

---

[46]LTD Plan § 1.1(gg), p. D00577.

[47]Plaintiff's Response to Defendants' Motion for Summary Judgment, Docket Entry No. 20, p. 30.

because it was based on the opinions of the peer review physicians who, after having reviewed evidence included in the administrative record, relied on the work release issued by Dr. Gartsman on March 17, 2003, and the FAE performed by an occupational therapist on June 16, 2003, to conclude that although impaired, plaintiff does not suffer a "total disability" as defined by the LTD Plan.

3.   <u>Additional Discovery</u>

Plaintiff argues that since the discovery deadline is May 27, 2005, the court should not grant the defendants' motion for summary judgment because she intends to propound additional discovery and depose an individual from Kemper who has knowledge about her claim.[48]  Since plaintiff neither argues that the administrative record is incomplete, nor describes how or why additional discovery is likely to produce evidence capable of showing that the BRC's denial of her claim for total disability benefits is arbitrary and capricious because it is not supported by substantial evidence in the administrative record, the court is not persuaded that summary judgment should not be granted at this time.

**IV.  <u>Conclusions and Order</u>**

For the reasons explained above, the court concludes that the BRC's denial of plaintiff's claim for total disability benefits

---

[48]<u>Id.</u> at pp. 30-31.

under the LTD Plan was not arbitrary and capricious but, instead, was supported by substantial evidence in the administrative record. Accordingly, Defendants' Motion for Summary Judgment (Docket Entry No. 17) is **GRANTED**.

      **SIGNED** at Houston, Texas, on this 20th day of April, 2005.

_____
                SIM LAKE
UNITED STATES DISTRICT JUDGE